The document below is hereby signed.

Signed: July 14, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

```
            UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
ELLIOTTE PATRICK COLEMAN,      )   Case No. 06-00254
                               )   (Chapter 13)
              Debtor.          )
_____)
                               )
ELLIOTTE PATRICK COLEMAN,      )
                               )
                               )
              Plaintiff,       )
                               )
         v.                    )   Adversary Proceeding No.
                               )   07-10022
COUNTRYWIDE HOME LOANS,        )
INC.,                          )
                               )   Not for Publication in
              Defendant.       )   West's Bankruptcy Reporter
```

MEMORANDUM DECISION REGARDING PLAINTIFF'S
MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL

On June 2, 2009, the plaintiff Coleman filed a motion for extension of the time to file a notice of appeal of the court's final judgment which was entered on May 11, 2009. (Docket Entry ("DE") No. 59.) The defendant Countrywide has filed an opposition. (DE No. 60.) The motion will be denied for the following reasons.

I

The judgment in this adversary proceeding was entered on Monday, May 11, 2009.  On Friday, May 15, 2009, Coleman attended a hearing in his chapter 13 case regarding an unrelated motion filed by the Chapter 13 trustee.  Coleman acknowledges that at that hearing, the court advised him that this adversary proceeding had been dismissed, but he asserts that he did not understand that this meant that a final judgment had been entered.  The hearing was held shortly before Coleman's scheduled time to report to work, and I infer in Coleman's favor that he was unable to visit the clerk's office on that day to obtain a copy of the judgment.  On the morning of Monday, May 18, 2009, Coleman obtained a copy of the final judgment.  Later that day, he received a copy of the judgment in the mail.

Under Rule 8001(a) of the Federal Rules of Bankruptcy Procedure, an appeal from a judgment "shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002."  In turn, Rule 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."  Ten days from May 11, 2009 was May 21, 2009.  Accordingly, Coleman had three full days after obtaining a copy of the judgment on May 18, 2009 within which to file a timely notice of appeal.  Under Rule 8002(c)(2):

> A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect. . . .

Coleman did not file his motion until June 2, 2009.  Accordingly, his motion cannot be granted except upon a showing of excusable neglect.

II

Coleman asserts that the time for filing a notice of appeal under Rule 8002(a) should take into consideration the date of receipt of the judgment (or knowledge of the judgment), and that otherwise the application of the rule "is unreasonable, prejudicial, does not serve the interest of justice and is inconsistent with applicable case law."  (DE No. 59, p. 3.)  Rule 8002(a) is plain that the time for filing the notice of appeal is measured from the date of entry of the judgment, not from the date of receipt of the judgment.  Accordingly, the deadline was May 21, 2009.

Even if the date of receipt controlled, ten days from May 18, 2009 would have been Wednesday, May 28, 2009.  Coleman contends that ten days from the date of receipt of the judgment on May 18, 2009 was June 2, 2009, because intervening weekends and the Memorial Day holiday ought not be included.  Coleman is in error in asserting that intervening weekends and holidays are

not included in computing a ten-day deadline.  Under Fed. R. Bankr. P. 9006(a), intervening weekends and holidays *are* included in the computation of a deadline unless the time prescribed or allowed is less than eight days.  Accordingly, even if the date of receipt controlled, the motion filed on June 2, 2009 was not filed by the deadline for filing a notice of appeal, and thus requires a showing of excusable neglect before it may be granted.

III

Coleman concedes that he was neglectful in not filing a timely notice of appeal, but contends that the neglect is excusable, stating that:

> Specifically, he did not become aware of the May 11, judgement and memorandum until May 18.  Five business days had already passed and he was faced with a dilemma that was unexpected and beyond his control.  In response, he spent days considering a request for an amendment to the order entry date and other pleadings which were likely inappropriate.

(DE No. 59, p. 4.)  That does not establish excusable neglect.

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1992), the Court addressed "excusable neglect" in the context of a late proof of claim and Fed. R. Bankr. P. 9006(b)(1), stating:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" . . . is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

*Id.* at 392 (footnotes omitted).  As to whether neglect is

"excusable," the Court stated:

> the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include . . . the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395 (citation and footnotes omitted).

Coleman has not shown that this is an extraordinary case that falls outside of the Court's observation in *Pioneer*, 507 U.S. at 392, that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ."

As to the issue of prejudice to the non-moving party, Countrywide asserts that it would be prejudiced if Coleman is allowed to appeal out of time because Countrywide will be further delayed in exercising its rights under its deed of trust.  But during the pendency of Coleman's bankruptcy case, Countrywide's right to proceed with foreclosure is controlled by a consent order in the main case addressing when the automatic stay of 11 U.S.C. § 362(a) will be lifted to permit foreclosure.  Although Countrywide may feel that it ought not foreclose so long as there is a possibility that the validity of its claim is still subject to challenge, that is the same "prejudice" that Countrywide would suffer if the appeal had been timely.  Countrywide has not contended that the delay would impair its ability to defend an

5

appeal (or a trial if the court's judgment were reversed).  Being exposed to an appellate review of the bankruptcy court's judgment is not the type of prejudice that *Pioneer* was addressing.  Accordingly, this factor weighs in Coleman's favor.

*Pioneer* also directs that the court examine the length of the delay, and its impact on judicial proceedings.  Coleman filed his motion for an enlargement of time on June 2, 2009, twelve days after the deadline for a timely notice of appeal or a timely motion to enlarge the time for filing a notice of appeal.  Although his filing was twenty-two days after the judgment, more than double the ten-day period allotted, delays of that length are routinely granted on a timely Rule 8002(c)(2) motion (which requires no showing of excusable neglect) - for example, when requested by a litigant who desires additional time to assess whether to pursue an appeal.  The delay will have no adverse impact on judicial proceedings.  Based on the ruling in this adversary proceeding, the court has already overruled Coleman's objection to Countrywide's claim in the main case.  Accordingly, the chapter 13 trustee is free to make payments on Countrywide's prepetition arrearage claim that Coleman's confirmed plan provided would be paid under the plan.  The delay in pursuing the appeal will not unduly interfere with her ability to distribute plan funds.  Indeed, unless and until the court's overruling of Coleman's objection to Countrywide's claim is stayed, the appeal

will not interfere at all.  The only prejudice to judicial proceedings is the general one that arises from any motion for an extension of time based on excusable neglect - namely, the burden of addressing the motion.  However, that burden (and the judicial system's interest in discouraging parties from imposing that burden) is more appropriately addressed in considering the fourth factor of the reason for the delay.

As to the issue of good faith, I will assume that Coleman proceeded in good faith as there is no apparent reason why he would benefit from the delay.

That brings us to the final factor, the reason for the delay, and whether it was within the reasonable control of Coleman to avoid.  "The four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import."  *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000).  "While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry."  *Id.*

Coleman learned that the adversary proceeding had been dismissed five days after entry of the judgment.  He obtained a copy of the judgment on the morning of May 18, 2009, seven days after the judgment's entry, leaving him three full days (plus part of May 18) within which to file a notice of appeal.  His

delay in obtaining a copy of the judgment does not establish excusable neglect.  *See Land O'Lakes Farmland Feed LLC v. Gehl (In re Gehl)*, 324 B.R. 756, 759 (Bankr. N.D. Iowa 2005) (excusable neglect was not established based on five days having elapsed between the mailing of the order and the law firm's receipt of it, and counsel's being out of the office for three days).  Three full days after he obtained the judgment was plenty of time for Coleman to file a notice of appeal.

Coleman does not contend that he misunderstood Rule 8002(a) or that he even examined Rule 8002(a) before missing the appeal deadline.  He apparently contends that the ten-day deadline runs from the date of receipt, not the date of entry, and that intervening weekends and holidays are excluded in computing the ten days.  But that interpretation is at odds with the plain language of Rules 8002(a) and 9006(a).  Coleman has shown himself to be quite intelligent in the course of this adversary proceeding, and although the interpretation he advances is creative advocacy, he could not have thought that the deadline was June 2, 2009 if he had read the applicable rules carefully (and he does not actually contend that he held that belief).  A modicum of diligence in reading Rules 8002(a) and 9006(a) would have revealed to him that his notice of appeal was due on May 21, 2009, not June 2, 2009.

Most of the federal courts of appeals that have addressed the issue have held that failure to comply with a deadline cannot be treated as excusable neglect when the failure arose from a misunderstanding of a rule that sets forth the deadline in unambiguous terms.[1]  And even if the delay arose from a misreading of the rules, Coleman's failure to observe the plain meaning of Rules 8002(a) and 9006(a) was egregious.  (A failure to even consult the rules would be even more egregious.)  Under *Pioneer*, the ability to meet the deadline was *reasonably* within Coleman's control.

The actual explanation Coleman gives for why the delay is excusable is that he was "in a dilemma" and "he spent days

---

[1] *See*, *e.g.*, *Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) (concluding that an "inability or refusal to read and comprehend the plain language of the federal rules" can never constitute excusable neglect, and stating that "The term 'excusable neglect' . . . refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules."); *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 370 (2d Cir. 2003) (reversing district court's extension of deadline to appeal based upon paralegal's error), *cert. denied*, 540 U.S. 1105 (2004); David N. May, *Pioneer's Paradox: Appellate Rule 4(a)(5) and the Rule Against Excusing Ignorance of Law*, 48 Drake L. Rev. 677 (2000) (noting court of appeals decisions in which finding of excusable neglect by trial court was reversed when the neglect arose from a misunderstanding of a plain procedural rule).  *But see Pincay v. Andrews*, 389 F.3d 853, 855, 859 (9th Cir. 2004) (*en banc*) (affirming district court's extension of deadline to appeal based on paralegal's error, but recognizing that "a lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered"), *cert. denied*, 544 U.S. 961 (2005).

considering a request for an amendment to the order entry date and other pleadings which were likely inappropriate." By this, I take him to mean that he delayed pursuing an appeal because he wanted first to evaluate whether the court's decision was in error, and whether to file papers with the bankruptcy court to revise the ruling. But if he needed time to sort out whether to take an appeal, he could have filed a motion to enlarge the time for taking an appeal by the deadline of May 21, 2009. This proffer for why his neglect was excusable does not establish excusable neglect. By the morning of May 18, 2009, and possibly earlier, it was within Coleman's reasonable control to take steps to assure that any appeal would be timely.

Balancing the factors listed in *Pioneer*, I conclude that Coleman has not shown excusable neglect. This is not a case like *Pioneer* in which the rules required notice to creditors of the deadline for filing claims, but the notice was buried inconspicuously in a general notice regarding the case. Although Coleman is proceeding pro se, that does not make his neglect excusable. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel" (footnote omitted)); *United States ex rel. Grynberg v. Enron Corp. (In re Enron Corp.)*, 364 B.R. 482, 488 (S.D.N.Y. 2007) (ignorance by pro se litigant of

time limits does not constitute excusable neglect). The reason for Coleman's delay is so egregiously inexcusable that it outweighs the other *Pioneer* factors combined.

In addition, under *Pioneer*, the court is free to consider any other circumstances that bear on the exercise of its discretion. One factor to consider is the likelihood of injustice if the appeal is not allowed. *Pincay v. Andrews*, 389 F.3d at 859. Here, that factor only reinforces the foregoing conclusion that finding excusable neglect is unwarranted. I am convinced that there is little likelihood that Coleman would obtain a ruling that, as a matter of law, Countrywide's papers failed to establish the validity of its claim under the summary judgment standards of Fed. R. Civ. P. 56. Although the matter was factually dense, that does not mean that summary judgment was inappropriate. The material facts, although they took many pages to recite, were not in genuine dispute, and as a matter of law, Coleman was not entitled on those facts to the relief he sought. Countrywide entered into several arrangements with Coleman working with him to find ways for him to hold onto his property without Countrywide foreclosing on the property, and there simply is no evidence of bad faith as contended by Coleman. The enforcement of Countrywide's claim based on this court's judgment, without an appeal of the court's judgment being permitted, would not be an injustice.

11

IV

An order follows denying Coleman's motion for an enlargement of time to file a notice of appeal.

[Signed and dated above.]

Copies to: All counsel of record (via BNC, and also as to plaintiff, by clerk's mailing); Cynthia A. Niklas, Esq.; Office of United States Trustee.